Good morning. May it please the court. My name is Christy Hall and I represent the appellant Amee Pribyl. Amee Pribyl has been a deputy sheriff in the Wright County Sheriff's Office for 20 years, 10 of that in court security. When the court security sergeant position became open, she applied for it. And if you look at the objective on paper criteria, like years of relevant education and relevant experience, she was the most qualified applicant. But the job instead went to a male candidate, Drew Sherber. But before talking more about the facts, I'd like to talk about the law. The crucial legal issue here is the pretext analysis from the McDonnell Douglas burden shifting test. So I want to talk about the strongest evidence of pretext in this case, considered through the lens of the summary judgment standard. And the defendant, the county, articulated a non-discriminatory reason for promoting Sherber instead of Pribyl. Wright County says it did not promote Pribyl because of her interview performance. And that's clearly laid out in the briefs and the district court's order that that's the non-discriminatory reason. So here are Pribyl's two most important arguments that that's pretext. First, the promotion process here is highly unusual and subjective. Second, based on the objective interview notes, Pribyl actually did better than Sherber on her interview, contradicting the interview panelist's testimony. So I want to talk about that first most important reason for pretext. The promotion process here doesn't actually seem like it's designed to select the best person for the job. The process is that everybody applies and everybody who meets the minimum qualifications is interviewed. And those minimum qualifications are an associate's degree. Well, counsel, this is like we do on judges in many states where there's a screening and then a certain number are sent to someone who appoints. So really this process was designed to create the top five, right? Judge Benton, that's correct. Tell me the gender composition of the top five. The top five were all male. Great. Thank you. Proceed. So and the, you know, actually everybody who applies meets, you know, the minimum qualification standards because they're all deputy sheriffs, right? And so then what happens next is the interview itself happens. Can I interject a question on that? When you said everybody who applies qualifies because they're a deputy sheriff, weren't there more basic qualifications? You named the associate's degree. What were the basic bottom line qualifications just to even get in the door? Sure. Judge Kelly, this was addressed actually. There's an email chain and there's, you know, that discusses what should the minimum qualifications be? And they include things like post certification. No, not what should they be. What were they? They were post certification. They were an associate's degree. They might have included, you know, a few other minor things. But what does post certification mean? I know that there are some certifications that Ms. Bribble had, but what was the minimum qualification regarding certification? Certainly, Judge Loken. So the minimum, the post certification is actually, that's the license that you need to be a law enforcement officer. Minnesota police officer license. That's correct. That's correct. And because everybody who applied was a deputy sheriff already, they all met those standards. I mean, essentially there's complete overlap. So you're saying that if you are already an acting deputy sheriff, you would have by definition met all of the listed qualifications? I believe so, Judge Kelly. I mean, there was some discussion about whether they should require a minimum of five years as a deputy, but I'm not sure whether that actually made it into, it's not clear to me whether that actually made it into the qualifications. But Hoffman's testimony in his deposition is everybody who all deputy sheriffs. Two females, 17 males, right? That's correct, Your Honor. Thank you. So, and then it comes to the interview performance. So everybody passes, everybody goes to the interview, and the interviews are 20 minutes and they are completely unscored. The three panelists judge interview performance. I mean, Hoffman testifies, it's about whether you make eye contact, whether you communicate clearly. It's not on whether the content of your answers suggest you'd be a good fit. Did Ms. Pribble make the top three or four of any individual panelists? First, they picked their top three or four, right? That's correct, Your Honor. And she did not make the top for any of the three. Of any of the three of them, the HR or the two officers? That's correct. One was a captain and one was a, tell me the other two besides the HR. So there was a captain, there was another person from the command staff, I don't remember his rank at the time, and then there was a person from human resources. A woman. Yes, that's correct. But it's actually unusual. This is the first time that the interview isn't scored. If you look at the interview notes themselves, they lay out the criteria. You don't have to go on through this at length, but is this a cat's paw argument or not? This is not a cat's paw argument, I don't believe. How do you get past the fact that none of the panelists who are being accused of biased interview ratings, none of them was a decision maker? All they did was screen. So, Judge Loken, I do believe they were decision makers because the relevant decision here is to reject Deputy Pribble, who was the most qualified. She didn't even make it past that. Wait, if the only relief you get is she should have been a finalist, where does that get you in the lawsuit? Where's the adverse employment action of not being a finalist? Well, because, Your Honor, she couldn't, if she wasn't selected as a finalist, she couldn't be selected for the job. I mean, the argument here is... Are you saying the decision, the decision was the screening? That's correct. She was screened out of the process. The sheriff had independent authority to look beyond the screening had he so desired. That's correct. Which is the problem, of course, with the cat's paw argument. Right. The sheriff acknowledges, though, that what he did was trusted, you know, these three people that were on the interview panel, to give him the top candidates. Of course, just like screening judges. I mean, typically the senator and the president will trust the screening committee they've set up, at least up to a point. Yes, but the problem here is that because Pribble wasn't in, she was screened out. The sheriff never had an opportunity to consider her. What's your best case for a screening process, a claim that the screening process was the decision that was the gender or otherwise unlawful discrimination? Well, I think if you say otherwise, you have to, you know, you have to acknowledge that you're in a world where somebody can... I meant gender or... No, I meant gender, race, et cetera, et cetera. Certainly, Your Honor. What's the case where the screening process, which was non-determinative... So I think the problem here... Was found to be the unlawful discrimination. I don't know that there is a case that actually fixed that fact pattern, but I think... Because I don't think it doesn't rise to the level that the McDonnell-Douglas inquiry requires. Well, I think it does actually, Your Honor, because if you think about, you know, what happens if the screening process actually screens out the best qualified applicants, you know, then you just simply insulate yourself from liability by... Wait, wait, wait, best qualified. I mean, that begs the question. Well, but I think... You can't... All right, well, let's... I accept this as apparently true. Objectively, a strong argument can be made that she was the best qualified, but, you know, certifications and degrees and so forth don't get you job promotions if you don't have, for lack of a better word, the people skills. But I think there is actually evidence that she did have the people skills, which is part of the pretext. And I also think... But we don't have trials on that. That falls within our... You know, we don't sit as a super personnel committee. Certainly not. But if you look at the actual objective, what did she say on the interview? Her interview answers were highly relevant. Scherber's were not. And she wasn't given credit for these highly relevant answers. We don't compare her interview with Scherber's for this purpose. For purposes of pretext, I think you have to. The non-discriminatory reason here is that she did poorly on her interview, and Scherber did better. So I think you have to compare them to see whether that's, in fact, accurate. Did Pribble actually perform better than Scherber? And I think there's evidence that she did. Counsel, address the Amini case. I think the Amini case is your toughest hurdle, especially the end of it about subjectivity. In a way... And I think it's after Torgerson. Yes, it is. In a way, it's tougher on you than the Torgerson case is. So do address the Amini case. I bet you're familiar with it. Yes. So I think... I mean, and I think for many of these cases, right? In the Amini case, you have somebody who comes into the interview process and they actually end up revealing, you know, being confronted with the fact, you know, that they lied, essentially, about their contact with police officers, you know, at some earlier point. And then they're very, you know, Amini is very defensive, very upset about this. And that seems to be the primary thing that disqualifies him. And importantly, there is no evidence suggesting that Amini was the most highly qualified applicant. So I think this case... No, that's not quite true. At the end of the case, it says Amini scored better than most Caucasians in fitness and oral. I'm at the, you know, very end of the case, 10-7-7-7-8. Multiple language, college educated. I think the court is trying to say there that... Is it he or she? I'm sorry, I don't even know. The answer is, it looks like a he, that he was better qualified. You know, I think there's not a clear-cut evidence one way or the other. There are certainly suggestions, but I don't think it rises to the same degree that it does here with Pribble. Pribble has 10 years of experience in court security. She, while she's in court security, she earns her master's degree. She does three certificates in court security and uses that to design, you know, from the ground up an alarm testing plan that's still in use today. And she helps with the Lexapro policy manual. These are all of the things that are on the job criteria for what the court security sergeant does. And I do really quickly want to address some of the interview questions. And I want to reserve some time for rebuttal. But I just want to point to the differences between Pribble's and Sherber's interview answers. Because, in fact, this is the second piece of pretext here. There's evidence that she actually did better. So if you look at, for example, question 10 and review the interview notes for what each of them says, question 10 says, describe an occurrence at work that challenged your ability and the problem-solving techniques you used. Pribble says, in a courtroom, people can get loud and out of hand. And she solves that by being assertive and laying down ground rules. Sherber says that, in 1997, his employee probationary period was extended. And he didn't like it at the time, but it was probably for the best. And if you look at question 8, give us some examples of suggestions for change or improvement you've made as part of your work in this department. Pribble says she worked on the Lexapro policy manual. How many total questions were there? There were 10 questions. Thank you. And I think the three last ones are the most relevant because they talk about how do you incorporate your job skills. And so question 8, Sherber's answer is, suggestions for change or improvement, that's not my role as a deputy. I help the department by doing a good job. And then you look at the most contentious answer here. Whose answer was that? That was Sherber's answer. He's the one who received the promotion. It's not a bad answer. It's certainly not as good as providing relevant work that you have done for the department. I think, you know, that's a question that needs to be left to the jury. It's a credibility question. He worked in a courtroom, I can't remember. He had never worked in the courtroom, Your Honor. And so therefore, he's disqualified because he can't give relevant answers based on a courtroom experience? I don't believe that disqualifies him, Your Honor. But I think that leaves a fact question for the jury. Well, it means automatically someone who was coming out of a courtroom assignment is going to be better and must be objectively better in the interview. I mean, that's what I hear you saying. Well, I believe that it's a relevant factor. If somebody in interview answers is providing... It's relevant to the panel, but it's not relevant to a judge trying to ferret out employment discrimination. But the fact that these factors weren't considered at all as part of this highly unusual process suggests pretext. How do you know that? Because that's what they testified to. They testified she didn't meet the... She, you know, we didn't consider her experience. You had depositions of two of the three on the panel, right? You had depositions of two of the three on the panel? One of the three on the panel. Oh, one of the three, and then affidavits of the other two. Yes. I do have only a few seconds, so I'd like to reserve that. Thank you. Ms. Kelberg-Nelson? Thank you. May it please the court. I am Callie Kelberg-Nelson. I represent the appellee, Wright County, in this matter. Summary judgment should be affirmed because Wright County articulated legitimate non-discriminatory reason to not promote Deputy Pribble to the sergeant position, and that was her interview performance. While Deputy Pribble's education and experience got her to the interview, she still had to perform, and Wright County was entitled to assess her interview performance and compare it with the other applicants. So, was it once there was the cutoff of a certain minimal set of requirements or qualifications, were those factors taken into consideration in any way in the process, or was it in an entirely subjective interview that that ultimately resulted in the five that were submitted to the sheriff? Well, I believe it was a mix of both. I mean, Captain Hoffman did testify. I don't say I believe. We're talking summary judgment. The record viewed most favorably to the plaintiff, so give us the record that demonstrates that this was not an entirely subjective process, which, of course, our cases have criticized in the past. Right, and I think it is distinguished from the cases that you have decided. Give me the record. Okay, the joint appendix 118 through 123, that's Deputy Pribble's interview notes, and that's where you'll see that the interview questions, particularly, ask about education and experience. So, it is asking them to apply the objective criteria in the interview. So, I don't think it was completely subjective in how they asked the questions. They were applying the objective criteria. Who is they? The interview panel. The panel is, what do you mean by applying? I'm trying to figure out what role those factors played in the decision. There was talk of some additional questions that they asked, the interviewees, and I'm just trying to sort out whether this truly was 100 percent just a subjective gut feeling interview once you got through the gate, or whether those factors were factored in, and maybe there's not a direct answer. So, it's essentially a three-part process. They did the NeoGov application, and— Maybe the answer to that question would have to be found, would have to lie in the deposition or affidavit by the panelists. And Captain Hoffman— Did they address that? Maybe they weren't asked to, but if the county submitted their affidavits and didn't address this question, then I think there's a bad record for you. Captain Hoffman testified that the objective criteria, the education experience, got them to the interview process, and then from that point, he was assessing communication skills, their thought process, their articulation, and their overall presentation, and that's found at the Joint Appendix 100, pages 71 through 72 of Captain Hoffman's— That doesn't—that makes it sound like the interview itself is entirely subjective. And I don't think that there's— Suppose the relevant—if there was some, if there was clearly, if there was clear objective— If number 19 was clearly less qualified, objectively, based on experience and education and other objective criteria, than number one, and number 19 was a finalist and number one was not, that would raise some suspicion that the panelists only try to find who they like in the interview. Well, if number 19 was not qualified, did not meet the minimum qualifications, they never would have proceeded to the— No, comparative, not minimum, comparative. The screening is a comparative process. On what basis were they comparing? Was it strictly subjective or did they factor in the differences, qualitative differences, in the minimal qualifications of the 19? Captain Hoffman testified he had their Neo-Gov applications that gave their education and experience, but he was primarily just judging the interview, how they performed in the interview. And I think Torgerson supports that type of— I know the district court concluded that the Neo-Gov was not a freestanding factor.  About the horsepower, the objective horsepower of the applicants. Well, Captain Hoffman testified that he wanted Deputy Pribble to explain why her education and experience made her the better candidate. The affidavit of Captain Anselman also echoed those things. He wanted to hear what about your education and experience made you the best qualified candidate, and she failed to do that. I've heard Deputy Pribble's counsel wants us to second-guess every interview answer and compare how did Sherber perform and how did Deputy Pribble perform, and say that somehow, based on the notes, that Deputy Pribble performed better. And I just don't know how we can do that under the Brooks v. Ameron decision. Interview notes don't have to reflect every single impression of the interview panelist. And so I don't know how we would be able to really second-guess that. There's a claim that Deputy Pribble has people skills. Well, that's not really supported in the record. What we have are the interview notes. It's up to the interview panel to decide whether they felt like she had the people skills, particularly for the supervisory position. One of the things Captain Hoffman testified to is he's looking at eye contact. Can the person give eye contact in the interview? Because when they're giving discipline later as a supervisor, it's a little hard to give discipline when you can't even look the person in the eye. So he's looking for those types of subjective things. But that is a legitimate reason to move them on to the top candidate, as a top candidate, if they are able to do those types of things. And I think Torgerson and the other cases, Amini, they all support the idea that you can look at subjective things. You're going to have impressions about people. Even the Torgerson case cautions against the use of subjective considerations because they are easily fabricated. And the Amini case repeats that. So was it all subjective in the end? It was not all subjective. What part was it? Torgerson's got a lot of numbers, as you know. There's a footnote or two that are just full of numbers. They did have a lot more lengthy phases of a process. But if we look at what the fire chief, what it came down to, was the interview with the fire chief in Torgerson, where he found that he had awkward communication. I mean, things like that are definitely subjective. And that's the same thing we're looking at here. There, the applicants were lower on the objectives. They were at almost every stage. Right. And it's hard to say that Deputy Provo was so far above the other candidates. I've heard this talked as relevant education and relevant experience. But it's for the employer to decide what is relevant and that's how they did that. Unless it's discriminatory, right? Exactly. And there's no indication the interview panel was discriminating in any way. There was no gender bias. I mean, the closest we get is that question that was asked about a barrier and Deputy Provo admittedly misinterpreted the question and thought they were asking for a physical barrier. And so she answered about taking off her duty belt when she goes to the bathroom. That's as close as we get to a gender comment in the whole interview. And it was brought up by Deputy Provo. So I think it's really hard to establish that this interview panel had any type of discriminatory motive when they were selected. These interviews were not recorded, right? No, they were not. You know, in a mini, they were recorded. And that's where the court came away with the flavor that a mini was defensive, agitated, argumentative on the key question. And Torgerson, they were not. They had notes. And I think that the notes are what Captain Hoffman testified is he just tries to record as best he can what they say word for word. Obviously, he can't get it all down. And sometimes he'll note a negative impression. For example, when they asked to say what the mission statement means to you and how you would give that to your subordinates, Deputy Provo simply recited the mission statement and gave a little more to that. But he wrote recited mission statement on the notes. And you'll see that on Captain Anselm's notes, too. So I do think that the interview panel was entitled to consider the subjective criteria. And they did. They picked their top five. I think it's very important that not a single one of the panelists put Deputy Provo in their top five. I thought there was three or four they came up with, Council. Is that not true? I thought each panelist came up with three or four. Yeah, and there was some overlap. Ultimately, Sheriff Hagerty could only remember the top three he had in his mind that he considered. And Sheriff Hagerty had no involvement in the interview process. So he didn't provide input on what he was looking for or what he wanted out of the candidate. But it's undisputed that five names were submitted to the sheriff. Yes. As the quote, finalists. Yes. And that, as I understand it, two of the panelists had Scherber for number one. They had him in his top five. Judy Brown did say that she didn't have Scherber in her top five. But she also, in her affidavit, included that Deputy Provo did not perform well and she wasn't in her top five. So. And it's undisputed here that the sheriff could reach back beyond the panel. He could. He said he's never done it before. And he didn't see a reason to in this instance because. But he could, right? But he could. Clearly. But the top five that he received were all good candidates. So he saw no reason to go beyond that. So one thing I do, I don't know, I didn't hear it. It sounds like maybe it's being dropped a little bit. But these, I do want to comment on the statements about Sheriff Hagerty making about women going on maternity leave. And I. Well, did that affect him not going beyond the top five? No, I played no, absolutely no role in it at all. And so I did. I just want to wait now. That's assuming the facts favorable to you. How do we assume the facts favorable the other side? Well, he was he was not involved in the process at all. He testified that he. Why are you arguing this when it wasn't argued this morning? And it's fully briefed. Well, it was addressed in the brief. I just wanted to touch on. You're not you're not. Appellees are not supposed to repeat their briefs on issues that are not argued. OK, OK. Of course, you you can open the door for for slamming rebuttal as much as you want. OK, well, I just I would like you, though, to take a moment because I don't know the other side stressed it. It isn't their briefs. But do take a moment. He has the authority to go beyond the five. And we do have some statements by him that are maybe not direct evidence, but they're somewhere getting toward direct evidence. Why isn't that enough for them to get to the jury? Well, because Sheriff Hagerty testified that he played no role. He didn't give any input. So it's really like that's assuming the facts favorable to you. As you know, even credibility can be an issue that gets a plaintiff past summary judgment, says the United States Supreme Court. Well, there's been no evidence to the contrary that he was somehow involved. I also would like in like in that statement, the decision maker. Yeah, he was really involved. Well, sure. And the in the final one who has to be guilty of gender discrimination for plaintiff to win in the final decision. But he said he never even asked how Deputy Pribble did in her interview. He didn't ask how anybody of the others did pointed out that he it's acknowledged that he had the authority to look beyond the finalists. But he'd never done that. And he saw no reason to do that in this case. No reason because it's testified as to gender reflected, revealed gender discrimination would be plaintiff's argument. Why isn't that enough to get to summary past summary judgment? Well, because I think that statement is is a lot like the statement in Torgerson, where the fire, one of the people made a comment. We're going to hire this big guy because he'll be a good firefighter. They had absolutely no relevance to the plaintiff. The Torgerson's opinion says it is relevant how big you are and how strong you are. Right. But they said that it did not relate. That statement was not evidence of discrimination because it didn't relate to the plaintiff. And it wasn't about the abilities of females. For the same reason here, he wasn't making a comment about Deputy Pribble going on maternity leave. He's talking about women going on paternity maternity. Oh, actually, only a couple of officers and that he he wants them. He's trying to recruit women. He never said, as has been alleged, that he thought they were less reliable in any way. He wants them to come back to his force. So I really it's not even it's really just him saying a reality of the sheriff's office and actually a lot of professions that they face with women going out on maternity leave and deciding to stay at home. And so I don't think that it was relevant. Good. No, we've talked about it. Go ahead. It just wasn't relevant to Deputy Pribble because she she wasn't on maternity leave. She wasn't anticipating to take a maternity leave in any way. So it really did not even play a factor in Sheriff Hagerty. There's no dispute here that the sheriff certainly knew who all the applicants were, right? I don't know if he could tell you. He said he didn't know when he testified. He said he didn't even know how many people had applied. And he definitely knew about Deputy Pribble, right? After she she was not selected, she approached him and asked, how can I get promoted? But otherwise. Is that before or after he made the decision? That was after he made the decision. What does the record show what the sheriff himself knew when he made the decision? That he had the top five candidates. Did he know Pribble was an applicant or not? I don't think that he did. He did not even know. She'd been denied promotions two or three times before. She had. That's correct. And in the past, I'm running out of time. Had she ever asked the sheriff, how do I get promoted before? Not. This was the third or fourth time she'd failed. Not that I'm aware of. It's not in the record. Right. It's not in the record. But I would ask that summary judgment be affirmed. Thank you. For rebuttal. Thank you, Your Honors. Very briefly, I just want to point to some points in the record. First of all, Pribble's answer on the duty belt question, which you have to credit, is at Joint Appendix 54 to 55. It's a good answer. Joint Appendix 208, the process is entirely subjective. And the sheriff knew what he was looking for generally and thought it was so obvious that women would go on maternity leave, he mentioned it unprompted in his deposition. We would ask that this case be sent to a jury. Thank you, Your Honor. Thank you, counsel. The case has been thoroughly briefed and argued, and we will take it under advisement. Thank you.